UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BELVIN WILLIAMS,                                )
                                                )
                    Petitioner,                 )
                                                )
        vs.                                     )          Case No. 4:18 CV 515 (JMB)
                                                )
DAVID VANDERGRIFF,[1]                           )
                                                )
                    Respondent.                 )

**MEMORANDUM AND ORDER**

This matter is before the Court on Belvin Williams' petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  (ECF Nos. 1, 22)[2]  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.  See 28 U.S.C. § 636(c).

## I.      **Procedural Background**

Petitioner Belvin Williams ("Petitioner") is incarcerated pursuant to the judgment and sentence of the Circuit Court of City of Saint Louis, Missouri.  In particular, on February 14, 2013, a jury convicted Petitioner of one count of assault in the first degree (Count I), one count of robbery in the first degree (Count III), and two counts of armed criminal action (Counts II and IV).  (ECF Nos. 15-1 at 526)  The trial court sentenced Petitioner as a prior and persistent offender to four

---

[1] Petitioner is presently incarcerated at the Eastern Reception Diagnostic and Correctional Center  ("ERDCC") in Bonne Terre, Missouri.  David Vandergriff  is superintendent of  ERDCC and is substituted for Troy Steele as proper party respondent per Rule 2(a), Rules Governing Section 2254 Cases in United States District Courts.

[2] Petitioner is represented by counsel in this matter.  Counsel initially filed an unsigned version of the petition (ECF No. 1) and thereafter filed an amended petition which included counsel's signature, but retained the original date signed by Petitioner.  Other than counsel's signature, there are no substantive differences between the original and amended petitions.

consecutive sentences of thirty years of imprisonment.  (ECF Nos. 15-1 at 553-54 and Judgment, 15-4 at 48-51)

Petitioner appealed his convictions and sentences to the Missouri Court of Appeals, contending that:  (1) the trial court erred by not replacing an alleged sleeping juror with an alternate juror, and (2) the trial court erred in admitting the testimony of a parole officer regarding Petitioner's electronic monitoring device.  The Missouri Court of Appeals rejected Petitioner's arguments and affirmed convictions and sentences in a published decision.  See State v. Williams, 427 S.W.3d 259, 263-68 (Mo. Ct. App. 2014) (ECF No. 15-7).

On July 28, 2014, Petitioner filed a pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15, alleging seventeen grounds for relief.  (ECF No. 15-8 at 8-15)  The State Court appointed counsel for Petitioner, and on December 22, 2014, appointed counsel filed an amended Rule 29.15 motion.  (Id.  at 23-32)  In his amended Rule 29.15 motion, Petitioner alleged that his trial counsel was ineffective because counsel failed to impeach Victim and failed to raise objections to his parole officer's testimony.  Petitioner also alleged that the cumulative effect of his trial counsel's errors resulted in his conviction.  (Id. at 24-25)

The trial court denied Petitioner's Rule 29.15 motion following an evidentiary hearing. (Findings of Fact & Conclusions of Law ("FFCL", ECF No. 15-8 at 39-40).  Petitioner appealed, contending that trial counsel was ineffective for failing to raise valid legal objections to the parole officer's testimony.  The Missouri Court of Appeals affirmed the denial of post-conviction relief in an unpublished opinion.  Williams v. State, 519 S.W.3d 816 (Mo. Ct. App. 2017) (ECF No. 15-11).

On April 6, 2018, Petitioner filed a timely petition for relief pursuant to 28 U.S.C. § 2254. In the instant petition, Petitioner asserts four grounds for relief.  First, Petitioner contends that his

trial attorney provided ineffective assistance by failing to inform him that another attorney would serve as primary counsel at trial.   Second, Petitioner asserts that the trial court violated his constitutional rights by failing to remove an allegedly sleeping juror.  Third, Petitioner alleges that his trial counsel rendered ineffective assistance by failing to raise valid legal objections to the parole officer's testimony regarding how Petitioner's location monitoring system operated.  Fourth, Petitioner contends that his trial counsel was ineffective by failing to impeach Victim with evidence of his prior felony conviction.

Respondent concedes that Petitioner properly preserved Grounds Two and Three but contends that Petitioner procedurally defaulted Grounds One and Four.

## II.     <u>Factual Background</u>

The following facts are taken from the state court record.  On January 29, 2011, Petitioner attended a birthday dinner with D.C. (the mother of one of his sons) and her children.  (Trial Transcript, ECF No. 1 at 176-78, 250-51)  After dinner, they left separately; D.C dropped off her children at her mother's house and returned home.  (<u>Id.</u> at 253-54, 350)  Petitioner testified, that after dinner, he ran some work errands, picked up his live-in girlfriend L.B., returned to their townhouse around 7:00 p.m., and played cards with friends the rest of the evening.  (<u>Id.</u> at 251, 313, 343-44)

Later Victim and his cousin, J.L., drove to D.C.'s house.  Victim parked in front of D.C.'s house and left to go bar hopping with D.C. and J.L.  (<u>Id.</u> at 177-79, 245, 253)  After dropping D.C. off at a strip club, Victim and J.L. went out for food and then J.L. returned Victim to his car sometime between 4:00 a.m. and 5:00 a.m. on January 30, 2011.  (<u>Id.</u> at 181-84)  While in his car and waiting for the windshield to defrost, Victim heard a loud banging on the driver's side window. The frost on his windshield prevented Victim from seeing outside so he opened his car door.  (<u>Id.</u>

at 184-85, 217, 231)  When he opened the door, Victim saw a man pointing a gun at his face.  The man told Victim to "stop 'effing' with my girl" and shot Victim in the leg.  (Id. at 185, 188-89, 195, 199  210-11; see also ECF No. 15-7 at 2)  The man then hit Victim's head with the gun, stole his wallet, and shot Victim again.  (Id. at 191, 197)  Victim heard the gun click several more times, but the gun either jammed or was out of ammunition.  (Id. at 191)  After Victim heard a voice yell to the man to leave because he was not worth it, Victim heard the sound of squealing tires and a vehicle driving away.  (Id. at 200-01)  Victim testified that he had never seen the man before and that the man wore a black shirt and jogging pants.  (Id. at 199)

Victim returned to his running car, drove away, and called 911.  (Id. at 201-02)  After passing police cars responding to the call, Victim turned around and followed the police cars back to the scene of the shooting.  (Id. at 202)

After the shooting, Victim contacted J.L. and described the shooter as a black male with a medium complexion, black low-cut hair, no scars, marks, or tattoos, weighing between 155 to 185 pounds, and between 25 to 30 years old.  J.L. told Victim that Petitioner must have been the shooter.  (Id. at 202, 224-27, 241-42)  After seeing a picture of Petitioner on the computer, Victim realized Petitioner was the shooter.  (Id. at 202-03, 242)

Victim contacted the detective investigating the case, gave him Petitioner's picture, identified Petitioner as the shooter, and signed the photograph of Petitioner.  (Id. at 203, 271-72)  The detective arrested Petitioner.  Victim identified Petitioner from a physical line-up and again at trial.  (Id. at 203-04 208-09, 271-73)

Petitioner presented an alibi defense at trial, testifying that, on January 11, 2011, he was living with L.B, he arrived home after dinner at 7:00 p.m., and he did not leave the house until the following Monday morning.  (Id. at 339, 343, 347-48, 359)  Petitioner also testified that on the

evening of the crime, he was supervised by a parole officer and on a location monitoring program that required him to wear an electronic bracelet[3] and be home at a certain time.  Petitioner testified that he had complied with those requirements.  (Id. at 358-59, 401-02, 404-06, 408)  In addition, L.B. testified that Petitioner had returned home before his curfew on January 29, 2011, she heard him come upstairs to go to bed at 1:30 a.m., and she saw him in bed wearing the same clothes at 3:00 and 7:00 a.m. when she went to the bathroom.  (Id. at 312-13, 315-17)

Petitioner's parole officer testified for the State, in rebuttal, over defense counsel's objection.  The parole officer noted that the location monitoring system can be inaccurate if there is power loss or an issue with the phone lines inside the house.  (Id. at 422)  The parole officer acknowledged that Petitioner's phone service provider had more problems with the monitoring system than other providers, and an incident occurred where the system indicated an unauthorized leave when Petitioner was home.  (Id. at 420-21)  The parole officer explained that Petitioner's electronic monitoring system reported an unauthorized leave after midnight and an entry back home around 5:00 a.m., and that her call to his house went unanswered.  (Id. at 407, 409-10, 423) L.B. testified that when the parole officer called the house regarding the unauthorized leave, she answered the phone and verified with the parole officer that Petitioner was at home.  (Id. at 444)

### III.   Legal Standards

#### A.   General and Antiterrorism and Effective Death Penalty Act

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

---

[3] This electronic bracelet had to be within 100 feet of the system base inside of Petitioner's home to be in range.  (Id. at 417)

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 544 U.S. at 141, or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. 362, 406 (2000). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless

the petitioner rebuts the presumption with clear and convincing evidence.  Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1).  Erroneous findings of fact by the state courts do not ensure the grant of habeas relief.  Rather, the determination of these facts must be unreasonable in light of the evidence of record.  Sittner v. Bowersox, 2017 WL 5518025, at *3 (E.D. Mo. Nov. 17, 2017) (citing Collier, 485 F.3d at 423).

### B.   Ineffective Assistance of Counsel Claims

Three of Petitioner's grounds for relief involve claims of ineffective assistance of trial counsel.  To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby.  See Strickland v. Washington, 466 U.S. 668, 688 (1984).  With respect to the first Strickland prong, there is a strong presumption that counsel's conduct fell within the wide range of professionally reasonable assistance.  Id. at 689.  Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant."  Burt v. Titlow, 571 U.S. 12, 22-23 (2013) (quotation marks and citation omitted); see also Strickland, 466 U.S. at 689 (noting that a petitioner must show that the challenged action was not part of a sound trial strategy); Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (explaining that reviewing courts must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions") (citation omitted)).

To establish "prejudice," the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome."  Paulson v.

Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted).  Although Strickland

requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists

is sufficient to conclude that counsel was not constitutionally ineffective – [courts] need not make

a determination regarding deficiency."  Holder v. United States, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of

review."  Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563

U.S. 170, 202 (2011)).

> First, under Strickland, the state court must take a predictive judgment about the
> effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on
> whether it is "reasonably likely" that the result would have been different absent
> the errors.  Strickland, 466 U.S. 696. … To satisfy Strickland, the likelihood of a
> different result must be "substantial, not just conceivable."  Id.  Under AEDPA,
> [federal courts] must then give substantial deference  to the state court's predictive
> judgment.  So long as the state court's decision was not "contrary to" clearly
> established law, the remaining question under the "unreasonable application"
> clause of § 2254(d) is whether the state court's determination under the Strickland
> standard is unreasonable, not merely whether it is incorrect.  [Harrington v. Richter,
> 562 U.S. 86, 112, 101 (2011)].  This standard was meant to be difficult to meet, and
> "even a strong case for relief does not mean the state court's contrary conclusion
> was unreasonable."  Id. at [102.]

Williams, 695 F.3d at 831-32.  "When § 2254(d) applies, the question is not whether counsel's

actions were reasonable.  The question is whether there is any reasonable argument that counsel

satisfied Strickland's deferential standard."  Richter, 562 U.S. at 105.  In this context, a state court's

findings of fact made in the course of deciding a claim of ineffective assistance of counsel are

presumed to be correct.  Odem v. Hopkins, 382 F.3d 846, 849 (8th Cir. 2004).

## C.    Exhaustion and Procedural Default

"Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and

sentence are guided by rules designed to ensure that state-court judgments are accorded the finality

and respect necessary to preserve the integrity of legal proceedings within our system of

federalism. " Martinez v. Ryan, 566 U.S. 1, 9 (2012).  Accordingly, a federal habeas corpus petitioner must exhaust his state law remedies before he may bring a petition under 28 U.S.C. § 2254.  A petitioner has not exhausted his state law remedies if he still "has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  An appeal to an intermediate state appellate court exhausts state remedies in Missouri, permitting federal habeas review.  See Mo. Sup. Ct. R. 83.04.

The doctrine of procedural default normally bars the review of the substance of claims where  the petitioner failed to meet a state procedural requirement.  See Coleman v. Thompson, 501 U.S. 772, 729-30 (1991).  Thus, to preserve issues for federal habeas review, a state prisoner must fairly present his claims to the state courts during the trial court proceedings or post-conviction proceedings and on direct appeal.  Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997).

A petitioner may overcome a procedural default if he can demonstrate legally sufficient cause for default and actual prejudice resulting from it, or if failure to review the claim would result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750.  Thus, the petitioner "forfeit[s] his right to present his federal claim … unless he can meet strict cause and prejudice or actual innocence standards."  Greer v. Minnesota, 493 F.3d 952, 957 (8th Cir. 2007).

Generally, to establish cause for a procedural default, a petitioner must "show that some objective factor external to the defense impeded" his "efforts to comply with the State's procedural rule."  Coleman, 501 U.S. at 753.  To establish actual prejudice, a petitioner "must show that the errors of which he complains worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999).

It is not disputed that Petitioner properly exhausted his state remedies as to Grounds Two and Three.  It is also not disputed that Grounds One and Four were not presented to the Missouri

circuit court and maintained on appeal, therefore, under <u>Coleman</u>, they are procedurally defaulted. In his Traverse, however, Petitioner argues that his procedural default  of Grounds One and Four should be excused under <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012).

As the Eighth Circuit has explained, <u>Martinez v. Ryan</u> announced a narrow exception to the strict procedural default rule announced in <u>Coleman</u> relative to ineffective assistance of counsel claims.

> Under the exception, [Petitioner] may overcome the default if:   (A) the state collateral review proceeding was the initial review proceeding with respect to the ineffective-assistance-of-trial-counsel claim; (B) the ineffective-assistance claim is substantial; and (C) postconviction counsel's ineffectiveness was the cause for the default.

<u>Taylor v. Steele</u>, 2021 WL 3137968 at *3 (8th Cir. July 26, 2021) (internal quotations omitted; <u>citing</u> <u>Harris v. Wallace</u>, 984 F.3d 641, 648 (8th Cir. 2021)).   In other words, in limited circumstances,  ineffective  assistance  of  post-conviction  counsel  may  establish  cause  for  a petitioner's failure to raise an issue in state court.

Petitioner satisfied the first prong under <u>Martinez</u> because Missouri "prevent[s] individuals from pursuing claims of ineffective assistance of trial counsel on direct appeal," requiring instead that  they  make  such  claims  in  a  post-conviction  "initial-review  collateral  proceeding"  under Missouri Supreme Court Rule 29.15.  <u>See</u> Mo. S. Ct. R. 29.15(a); <u>Harris</u>, 984 F.3d at 648.  The second  prong  requires  Petitioner  to  show  that  his  underlying  ineffective  assistance  claim  is "substantial," that is, "that the claim has some merit."  <u>Martinez</u>, 566 U.S. at 14.  "To prove that his  ineffective-assistance  claims  are  substantial,  [petitioner]  must  show  that  his  counsel  was deficient and that his counsel's deficient performance prejudiced him."  <u>Slocum v. Kelley</u>, 854 F.3d 524, 532 (8th Cir. 2017).  Under the third <u>Martinez</u> prong, Petitioner must demonstrate that

his counsel during the state collateral review proceedings—in this case post-conviction relief ("PCR") counsel—was ineffective under Strickland.  See Martinez, 566 U.S. at 14.

A reviewing Court may also address the merits of a procedurally barred ground, and dismiss that ground, if it is without merit.  See 28 U.S.C. § 2254(d)(1)-(2).

### IV.    Grounds Raised and Analysis

Petitioner raised four grounds for relief in his petition.  First, Petitioner contends that his retained trial attorney provided ineffective assistance by failing to inform him that another attorney would serve as primary counsel at trial.  Second, Petitioner asserts that the trial court violated his constitutional rights by not removing an allegedly sleeping juror.  Third, Petitioner alleges that his trial counsel was ineffective by failing to raise legally valid objections to a parole officer's testimony concerning Petitioner's location monitoring system.  Fourth, Petitioner asserts that his trial counsel provided ineffective assistance by failing to impeach Victim.

### A.    Procedurally Defaulted Grounds One and Four

Grounds One and Four both raise claims of ineffective assistance of trial counsel.  It is not disputed that Petitioner did not fully present Grounds One and Four during his Rule 29.15 proceedings.[4]  Thus, he has procedurally defaulted those claims.  Petitioner contends that his default is excused pursuant to Martinez v. Ryan.  Petitioner claims that his PCR counsel was ineffective by failing to fully pursue these claims.

To assert a claim under Martinez, Petitioner must show that the omitted claims were substantial in that they had some merit.  See Martinez, 566 U.S. at 14; Dansby v. Hobbs, 766 F.3d

---

[4] Petitioner included these claims in a pro se Rule 29.15 motion, but the claims were not retained when his appointed PCR counsel filed an amended Rule 29.15 motion.  "Under Missouri law, an amended Rule 29.15 motion supersedes any pro se motion. "  Wilson v. Lewis, 2016 WL 8652296 at *13, 4:14 CV 72 RWS (JMB) (E.D. Mo. Dec. 30, 2016) (citing Leach v. State, 14 S.W.3d 668, 670 (Mo. banc 2000)).

809, 834 (8th Cir. 2014).  As explained below, upon review of the record pursuant to <u>Martinez</u>, the Court finds that Petitioner has not established that his PCR counsel was ineffective for failing to include the claim raised in Ground One in the amended Rule 29.15 motion.  Furthermore, the Court finds that PCR counsel was not ineffective in failing to include the claim raised in Ground Four on appeal from the denial of the amended Rule 29.15 motion.

Regarding Ground One, Petitioner contends that his trial counsel was ineffective because he did not timely inform Petitioner that he would not be first chair at his trial and that his law partner would serve as primary trial counsel.  Petitioner retained James Martin as his trial attorney but, due to Mr. Martin's administrative suspension by the Missouri Bar during the course of Petitioner's representation, Mr. Martin's law partner, John Malec, entered his appearance on Petitioner's behalf.  The trial court denied a request to continue and reset the trial based on Mr. Martin's administrative suspension from the practice of law, which precluded him from appearing in a representative capacity at trial.

The Sixth Amendment guarantees a defendant's right "to select and be represented by one's preferred attorney," so long as that attorney is "an otherwise qualified attorney whom that defendant can afford to hire."  <u>Caplin & Drysdale, Chartered v. United States</u>, 491 U.S. 617, 624 (1989) (citation omitted).  A defendant's right to counsel of choice is implicated when the Court interferes with the defendant's attempt to hire or fire particular counsel, for example, by denying a defendant's motion to continue in order to substitute new counsel.  <u>See</u>, <u>e.g.</u>, <u>United States v. Jones</u>, 662 F.3d 1018, 1024 (8th Cir. 2011).  Petitioner cites to no cases indicating that his own retained defense counsel can violate his Sixth Amendment right to counsel of choice.

In this case, neither the trial court nor the State took any action to interfere with Petitioner's right to counsel of choice.  Petitioner hired the firm he wished to hire and his alleged counsel of

choice—Mr. Martin—was not otherwise qualified because he was suspended at the time.  More importantly, Petitioner never objected to Mr. Malec's representation during the trial court proceedings.  Furthermore, it is not disputed that Mr. Martin was present and actively participated during the trial by assisting Mr. Malec.  Petitioner never sought to terminate either attorney.  Significantly, at sentencing, when he was under oath and given a specific opportunity to complain, Petitioner did not voice any concerns about his legal representation or the handling of his case at trial.  (ECF No. 1 at 556-57)  This fact alone is arguably sufficient to doom any argument that this ground had merit or that PCR counsel should have included it in the amended Rule 29.15 motion.

As to whether counsel had a financial conflict of interest, a habeas petitioner can establish a Sixth Amendment violation if he can demonstrate that "an actual conflict of interest adversely affected his lawyer's performance."  Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).  To fall within Cuyler, Petitioner must demonstrate both that his attorney acted under an actual conflict of interest, as opposed to a potential one, and that the conflict of interest actually affected the adequacy of representation.  See Simmons v. Lockhart, 915 F.2d 718, 721 (8th Cir. 1990).

In this case, even assuming that an actual conflict of interest existed, Petitioner has not demonstrated how any conflict of interest actually affected the adequacy of Mr. Malec's representation.  Thus, Petitioner has not met his burden under Cuyler.

Similarly, Petitioner has not shown any prejudice required to prevail on an ineffective assistance of counsel claim.  Petitioner has failed to allege facts demonstrating that his counsel had an actual conflict of interest that adversely affected his performance.  Petitioner has not identified a single meritorious motion that could have or should have been filed that was not filed, or a singly meritorious objection that was not made.  Likewise, Petitioner has not alleged any facts that show a reasonable probability that the outcome of his trial would have been different if Mr. Martin had

13

been lead counsel rather than assistant counsel at trial.  Rather, Petitioner has set forth mere speculation and unsupported conclusions.  Petitioner asks the Court to draw the speculative conclusion that, because there was a strong likelihood he would have terminated Mr. Martin's representation, Mr. Martin and Mr. Malec chose not to carry out their professional duties to Petitioner to fully investigate and prepare for trial.  No facts in the record support such a speculative conclusion.

In sum, Petitioner's Ground One was not substantial and, therefore, PCR counsel was not ineffective in declining to include that ground in the amended Rule 29.15 motion.

Turning next to Ground Four, Petitioner contends that trial counsel was constitutionally deficient in failing to impeach Victim with evidence of a prior felony conviction.  This ground lacks merit and, therefore, is not substantial.  This claim was raised in Petitioner's amended Rule 29.15 motion, but not included in the subsequent appeal.  The Rule 29.15 motion court denied the claim, specifically noting that "[n]ot only did [trial counsel] elicit evidence of [Victim's] prior felony conviction during cross-examination, but he also argued to the jury that the evidence was something the jury should consider when evaluating the credibility of [Victim's] testimony."  (ECF No. 15-8 at 41)  Accordingly, PCR counsel was not ineffective in failing to raise include this issue when counsel appealed the denial of the amended Rule 29.15 motion.

Petitioner has failed to satisfy the <u>Martinez</u> standard because the claims raised in Grounds One and Four are not substantial.  Because they are not substantial, PCR counsel was not ineffective in failing to fully pursue them in state court.  Accordingly, Petitioner has failed to

establish cause and prejudice to excuse the procedural default.[5]   Grounds One and Four are procedurally defaulted and, therefore, denied.

### B.    Ground Two: Failure to Remove Juror

Petitioner alleges that the trial court's failure to remove a sleeping juror denied him his right to due process and a fair trial.  Petitioner asserts that the trial court was aware that "Juror [X]" had been seen sleeping during trial, and the juror admitted being close to nodding off and offered to be replaced out of fairness.

Petitioner raised this argument in his direct appeal, which the Missouri Court of Appeals denied.  The appellate court summarized the background facts for this issue as follows:

> On the second day of trial, after all the evidence was adduced and instructions were read by the court to the jury, defense counsel requested a side bar.  At that time, defense counsel stated that Juror [X] was "substantially nodding off," counting at least ten occasions when he had "closed his eyes and his head went down and then he stumbled" during testimony.  Counsel expressed concern that this "may be a problem when they deliberate."  At that time, the prosecutor stated he had not observed anything.  Defense counsel did not make a motion to strike the juror at this point and the proceeding continued.

> After closing arguments, defense counsel again raised the issue with the court, stating he saw Juror [X] sleeping during closing arguments and the juror next to him prod him awake with his elbow.  After excusing the rest of the jury for their lunch recess, the court conducted the following examination of Juror [X].

> The Court:  I just want to be sure.  I noticed a few times that you might have been sort of nodding.

> Juror [X]:  But I didn't doze off.

> The Court:  Were you following?

> Juror [X]:  I was close to it, but I did not doze off.

---

[5] Petitioner has also failed to show that a fundamental carriage of justice will result if his defaulted claims are not considered.  See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (The fundamental miscarriage of justice exception "requires a habeas petitioner to present new evidence that affirmatively demonstrates that his is innocent of the crime for which he was convicted.").

The Court:  Okay.  I mean, you know, I know sometimes, you know, that's – people, you know, do that, but it doesn't mean that they are sleeping.  I mean, I just – you're okay and everything?

Juror [X]:  Yes.

The Court:  You're not on any medication or anything like that –

Juror [X]:  No.

The Court:  -- that would affect that?

Juror [X]:  Now it is just I haven't slept well the last couple of nights.  In fact, the person next to me – I said, now, if you see me to start to doze off or you think I'm dozing, nudge me.

The Court:  Okay.

Juror [X]:  And he nudged me once or twice and it was right at that point, but no.

The Court:  You followed everything throughout the case?

Juror [X]:  Yes, sir.

The Court:  Monday or yesterday and today?

Juror [X]:  If I hadn't I would tell you, sir.

The Court:  Okay.  You're comfortable then proceeding?

Juror [X]:  Yes.

The Court:  You don't feel you missed anything?

Juror [X]:  No.

The Court:  Seemed like you -- I watched you and, you know, like your head would kind of fall, but it would come up.  It didn't seem like – it didn't stay for any length and that you were catching yourself, but you were following everything?

Juror [X]:  That one time you all were talking over there, I thought you were talking about me.

The Court:  I just want to be sure that you know.

Juror [X]:  Yeah.

The Court:  Because sometimes –

Juror [X]:  I understand that it is very important.

The Court:  It could be medication.  It could be a lot of reasons.  And that's what it is.  So no problem with that.  I just want to be sure

Juror [X]:  Okay.

The Court:  Because in fairness to you –

Juror [X]:  I understand.

The Court:   -- to make this decision, you know, I want to be sure that you got everything and that you're comfortable proceeding, so you're okay?

Juror [X]:  Yep.

The Court:  Okay. Very good…

Williams, 427 S.W.3d at 263-64; (ECF Nos.  15-1 at 518-20 and 15-7 at 6-8).

Defense counsel was allowed to question Juror [X] as well.  Juror [X] represented that, "[t]o be fair to the trial and that if you would rather replace me, that's is fine.  I don't think I missed anything.  I think I'll be fair.  But -."  (Trial Transcript, ECF No. 1 at 521)  After thoroughly exploring the situation, the trial court denied Petitioner's motion to replace the juror, stating:

> … I did notice him yesterday, but it was the same as today because I observed him after you brought it to this Court's attention and it was a matter of closing his eyes and his chin going down and then he was popping up.  He admitted that the man next to him did give him an elbow.  He also said he's not missed anything.  He's comfortable.  He has followed this[.]
>
> … I've noticed him.  It was no more than an instant.  I mean, you say seconds.  I don't know.  Second or two.  It certainly wasn't of any length and then – and then he – he was up.  His eyes were open.  He didn't have a grogginess or, you know, his head swaying form side to side.  And I made sure that I watched him.  I 've talked to him.  He has no concerns.  He's indicated that he's followed everything.  He understands the importance.  And I don't see any reason to dismiss him.  So motion again is denied.

17

Williams, 427 S.W.3d at 264; (ECF Nos.  15-1 at 523-24 and 15-7 at 8).

In denying Petitioner's motion for new trial, the trial court specifically found that, after questioning Juror [X] "to a great extent," there was no reason to remove the juror based on the record.  The court further opined that "removing jurors should be done lightly, and there's no indication that anything was missed."  (ECF No. 15-1 at 523-24)

Under both Missouri and federal law, the decision to remove a juror, including an allegedly sleeping juror, lies with the sound discretion of the trial judge.  See Lester v. Sayles, 850 S.W.2d 858, 870 (Mo. banc 1993); United States v. Green, 428 F.3d 1131, 1135 (8th Cir. 2005).  The mere fact that a juror slept during the trial does not entitle Petitioner to relief, he must have been prejudiced by that sleeping juror.  Vonn v. State, 26 S.W.3d 377, 381 (Mo. Ct. App. 2000).

On the present record, there can be no doubt that the trial court was aware of the allegation that Juror [X] had slept through portions of the trial and had fully considered the issue and all relevant circumstances.  Defense counsel raised the issue at least three times—during trial, after closing arguments, and in a motion for a new trial.  Thus, the record supports a conclusion that the trial court acted within its sound discretion in declining to remove and replace the allegedly sleeping juror.

The Missouri Court of Appeals correctly recognized that the "substitution of a juror is a matter entrusted to the trial court's discretion."  (ECF No. 15-7 at 8, citing State v. Rose, 169 S.W.3d 132, 134 (Mo. Ct. App. 2005)).  The Missouri Court of Appeals considered the relevant record on this issue and concluded that the trial court did not abuse its discretion in denying Petitioner's request to remove and replace Juror [X].  (Id.)

The undersigned finds that the Missouri Court of Appeals' decision is entitled to deference because it was neither contrary to, nor an unreasonable application of, applicable federal law.  The

Court further finds that the decision of the Missouri Court of Appeals court was based on a reasonable determination of the facts in light of the record of Petitioner's trial.  See § 2254(d). Petitioner's Ground Two is denied.

### C.   Ground Three:  Parole Officer's Testimony

Petitioner argues that his trial counsel provided ineffective assistance by failing to raise valid legal objections to a parole officer's testimony regarding his electronic location monitoring equipment, which the State offered to rebut Petitioner's alibi defense. Petitioner raised this claim in his state post-conviction proceedings and on post-conviction appeal, which the Missouri Court of Appeals denied.

In his direct appeal, Petitioner argued that the trial court abused its discretion in permitting the parole officer to opine on how the location monitoring system operated, including potential system malfunctions.  Petitioner argued that the officer's testimony was speculative, lacked foundation, outside her area of expertise, and invaded the province of the jury.  The Missouri Court of Appeals summarized the relevant trial testimony as follows:

> [Parole Officer] testified that she had 14 years' experience as a probation and parole officer for the State of Missouri.  She testified she received two days of training on interpreting the electronic monitoring system's reports from the company that manufactures and installs the devices.  [Parole Officer] acknowledged she was not trained in the maintenance of or scientific principles behind the device.  [Parole Officer] did, however, testify that she was familiar with the electronic monitoring system and the reports that it generates.

> [Parole Officer] testified the electronic monitoring system uses an ankle bracelet placed on the client, a receiver that communicates through the telephone line and a power cord.  The monitoring system has a backup battery and system so clients cannot manipulate the equipment; however, the clients are not told of this fact.  The system will continue to gather information if unplugged or disconnected and will transmit the accumulated collected data when the receiver is reconnected to the telephone jack.

> [Parole Officer] testified that at 12:33 a.m. on January 30, 2011, [Petitioner's] monitor reported a power loss and a power restore, meaning the

device was momentarily unplugged form the power source.  Then at 12:53 a.m., [Parole Officer] received from [Petitioner's] monitor a "need location verify" message, meaning the receiver could not communicate with the telephone line or that the phone jack was disconnected from the telephone service.  At 3:10 a.m., the report indicated there was a "received missed call back," meaning the device was still looking to be plugged into the telephone jack.

At 10:23 a.m. on January 30, 2011, [Petitioner's] monitoring device was reconnected and the information stored in the backup system started to download.  At that time, the monitoring system reported that [Petitioner] made an "unauthorized leave," meaning he left the residence outside of his scheduled curfew, at 12:53 a.m. on January 30, 2011.  The system then showed an "unauthorized entry" at 5:36 a.m. on January 30, 2011.  [Parole Officer] testified that no other issues were reported after that.  [Parole Officer] testified the records indicate [Petitioner] was not present at home between 12:53 a.m. and 5:36 a.m. on January 30, 2011.  [Parole Officer] testified that unplugging the device from its power source or the phone line will not result in the system registering a false unauthorized leave or entry.

During cross-examination, [Parole Officer] acknowledged that she did not know if there were other malfunctions of the machine or the phone lines that could possibly cause the reading at issue.  [Parole Officer] stated some telephone companies have more problems with the electronic monitoring devices than others and that YourTel has more problems than AT&T.  [Parole Officer] testified that she called [Petitioner] after receiving the "need location verify" notification and no one answered the house phone and [Petitioner's] cell phone was disconnected.  [Parole Officer] stated if the phone  line was not working, it would report "receiver callback" or "need location verify."

Williams, 427 S.W.3d at 265; (ECF No. 15-7 at 9-11).

The Missouri Court of Appeals held that the trial court did not abuse its discretion in admitting the parole officer's testimony regarding the operation of the location monitoring system and the reports it generates because she possessed some qualifications to testify about the electronic system and the reports it generated, and her limited knowledge as to the scientific principles underlying the device went to the weight of her testimony, not to its admissibility.  Moreover, the appellate court noted that counsel was able to cross-examine the parole officer about the limits of her knowledge and her expertise with regard to the ankle monitoring device.

In his Rule 29.15 post-conviction motion, Petitioner argued that his trial counsel was ineffective by failing to object to the parole officer's testimony.  The Rule 29.15 motion court rejected this contention, noting that trial counsel had, in fact, raised multiple objections to the testimony, before, during, and after the trial.  (See FFCL, ECF No. 15-8 at 41)  In his post-conviction appeal, Petitioner argued "that his trial attorneys were ineffective for failing to raise valid legal objections" to the parole officer's testimony.  (ECF No. 15-11 at 2)

The Missouri Court of Appeals rejected Petitioner's post-conviction version of this claim.[6] That court concluded that the parole officer's testimony was legitimate rebuttal evidence, and the testimony was properly admissible to rebut Petitioner's alibi evidence and defense.  The appellate court concluded, therefore, that Petitioner's "trial attorneys had no duty to object and were not ineffective for failing to make a meritless objection."  (ECF No. 15-11 at 7)

The appellate court also explained that "even if an objection by trial counsel triggered the trial court to exclude the testimony …, [Petitioner] cannot demonstrate a reasonable probability that the result of the trial would have been different."  (Id.)  In this regard, the Missouri Court of Appeals noted that, under Missouri law, an alibi renders it impossible for the defendant to be the guilty party.  (Id. citing Wren v. State, 313 S.W.3d 211, 218 (Mo. Ct. App. 2010)).  The court concluded, therefore, that L.B. "did not provide a true alibi," because she merely testified that she saw Petitioner in bed at 3:00 a.m. and 7 a.m., while the shooting occurred between 4 a.m. and 5 a.m.  (Id.)  The Missouri Court of Appeals contrasted this imperfect alibi testimony with Victim's

---

[6] The Missouri Court of Appeals arguably suggested that the issue was raised and rejected on direct appeal, noting that "an issue that was decided on direct appeal cannot be reconsidered in a post-conviction proceeding by transforming it into an ineffective assistance of counsel claim." (ECF No. 15-11 at 4 citing Leisure v. State, 828 S.W.2d 872, 874 (Mo. banc 1992)).  Nonetheless, the appellate court addressed the merits of Petitioner's post-conviction claim.

"multiple and unequivocal identifications of [Petitioner] as the shooter," concluding that his testimony provided sufficient evidence to support the jury's verdict.  (Id.)

On this record, therefore, the undersigned finds that Petitioner has not established that he is entitled to relief under the "doubly deferential" standard that applies to ineffective-assistance claims.  See Titlow, 571 U.S. at 15.  He has not shown that the decision of the Missouri courts was contrary to or an unreasonable application of Strickland, or that the Missouri courts unreasonably applied Strickland to the facts in this case.  He has not shown that his trial counsel's treatment of the parole officer's testimony was constitutionally unreasonable.

Petitioner's claim in Ground Three is denied.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the petition of Belvin Williams for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF Nos. 1, 22) is **denied**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued, because Petitioner has not made a substantial showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 123 S. Ct. 1029, 1040 (2003) (standard for issuing a certificate of appealability).

/s/ John M. Bodenhausen
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of August, 2021.